23-1185-cv
*Flores v. N.Y. Football Giants, et al.*

# In the
# United States Court of Appeals
## for the Second Circuit

———

AUGUST TERM 2024

No. 23-1185-cv

BRIAN FLORES, as a class representative on behalf of himself and all
others similarly situated,
*Plaintiff-Appellee,*

v.

NEW YORK FOOTBALL GIANTS, INC.; HOUSTON NFL HOLDINGS, L.P.,
DBA HOUSTON TEXANS; DENVER BRONCOS; NATIONAL FOOTBALL
LEAGUE,
*Defendants-Appellants.*[*]

———

On Appeal from the United States District Court
for the Southern District of New York

———

ARGUED: MARCH 25, 2025
DECIDED: AUGUST 14, 2025

———

———

[*] The Clerk of Court is directed to amend the caption as set forth above.

Before: CABRANES, LYNCH, and LOHIER, *Circuit Judges*.

———————

The National Football League ("NFL") and six of its member clubs (jointly "Defendants") moved to compel arbitration of a putative class action brought by Plaintiffs Brian Flores, Steve Wilks, and Ray Horton—current and former NFL coaches—alleging, in relevant part, claims of racial discrimination under 42 U.S.C. § 1981. The questions presented are whether the United States District Court for the Southern District of New York (Valerie E. Caproni, Judge) erred by partially denying Defendants' motion to compel arbitration and "abused its discretion" by denying Defendants' motion for reconsideration. More specifically, we consider: (1) whether the District Court erred by denying arbitration of Flores's claims against the Denver Broncos and the NFL based on his employment agreement with the New England Patriots, which incorporated by reference the NFL Constitution; (2) whether the District Court correctly denied Defendants' motion to compel arbitration of Flores's claims against the New York Giants, Houston Texans, and the NFL; and (3) whether the District Court abused its discretion by denying Defendants' motion for reconsideration.

We **AFFIRM** the District Court's order denying the motion to compel arbitration of Flores's claims against the Denver Broncos, New York Giants, Houston Texans, and NFL. We also **AFFIRM** the District Court's order denying reconsideration.

2

We conclude that: (1a) Flores's agreement under the NFL Constitution to submit his statutory claims against the Broncos and the NFL to the unilateral substantive and procedural discretion of the NFL Commissioner—the principal executive of one of Flores's adverse parties—provides for arbitration in name only and accordingly lacks the protection of the Federal Arbitration Act ("FAA"); (1b) Flores's agreement to submit his statutory claims against the Broncos and the NFL to the unilateral discretion of the NFL Commissioner is unenforceable because the agreement fails to guarantee that Flores can "vindicate [his] statutory cause of action in [an] *arbitral forum*", (1c) the District Court did not err when it denied Defendants' motion to compel arbitration of Flores's claims against the Giants, Texans, and the NFL; and (2) the District Court did not abuse its discretion by denying Defendants' motion for reconsideration.

———

KANNON K. SHANMUGAM, Paul, Weiss, Rifkind, Wharton & Garrison LLP, Washington, DC (Loretta E. Lynch, Brad S. Karp, Lynn B. Bayard, Brette Tannenbaum, Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, NY, William T. Marks, Paul, Weiss, Rifkind, Wharton & Garrison LLP, Washington, DC, *on the brief*), *for Defendants-Appellants,*

DAVID E. GOTTLIEB, Wigdor LLP, New York, NY (Douglas H. Wigdor, Michael J. Willemin, Wigdor LLP, New York, NY, John Elefterakis, Elefterakis, Elefterakis & Panek, New York, NY, *on the brief*), *for Plaintiff-Appellee,*

KEVIN MINTZER, Law Office of Kevin Mintzer, P.C., New York, NY, *for Amici Curiae Professors Gilat Juli Bachar, Rick Bales, George A. Bermann, Ylli Dautaj, Benjamin Davis, Michael Z. Green, Deborah Hensler, Ariana R. Levinson, Alan B. Morrison, Alexi Pfeffer-Gillet, Andrea Kupfer Schneider, and Imre Stephen Szalai.*

---

JOSÉ A. CABRANES, *Circuit Judge*:

The National Football League ("NFL") and six of its member clubs (jointly "Defendants") moved to compel arbitration of a putative class action brought by Plaintiffs Brian Flores, Steve Wilks, and Ray Horton—current and former NFL coaches—alleging, in relevant part, claims of racial discrimination under a federal statute and state and local law.[1] The questions presented are whether the United States District Court for the Southern District of New York (Valerie E.

---

[1] Plaintiffs brought claims under 42 U.S.C. § 1981. *See post* note 5.

4

Caproni, Judge) erred by partially denying Defendants' motion to compel arbitration and "abused its discretion" by denying Defendants' motion for reconsideration. More specifically, we consider: (1) whether the District Court erred by denying arbitration of Flores's claims against the Denver Broncos and the NFL based on his employment agreement with the New England Patriots, which incorporated by reference the NFL Constitution; (2) whether the District Court erred when it denied Defendants' motion to compel arbitration of Flores's claims against the New York Giants, Houston Texans, and the NFL; and (3) whether the District Court abused its discretion by denying Defendants' motion for reconsideration.

We **AFFIRM** the District Court's order denying the motion to compel arbitration of Flores's claims against the Denver Broncos, New York Giants, Houston Texans, and NFL. We also **AFFIRM** the District Court's order denying reconsideration.

We conclude that: (1a) Flores's agreement under the NFL Constitution to submit his statutory claims against the Broncos and the NFL to the unilateral substantive and procedural discretion of the NFL Commissioner—the principal executive of one of Flores's adverse parties—provides for arbitration in name only and accordingly lacks the protection of the Federal Arbitration Act ("FAA"); (1b) Flores's agreement to submit his statutory claims against the Broncos and the NFL to the unilateral discretion of the NFL Commissioner is unenforceable because the agreement fails to guarantee that Flores can

5

"vindicate [his] statutory cause of action in [an] *arbitral forum*";[2] (1c) the District Court did not err when it denied Defendants' motion to compel arbitration of Flores's claims against the Giants, Texans, and the NFL; and (2) the District Court did not abuse its discretion by denying Defendants' motion for reconsideration.

## I. BACKGROUND

Brian Flores is the current defensive coordinator of the Minnesota Vikings, a member club of the NFL. Since 2008, Flores has been employed as a football coach by a variety of NFL member clubs, namely the New England Patriots (2008-2018), Miami Dolphins (2019-21), Pittsburgh Steelers (2022), and Minnesota Vikings (2023-Present).

The NFL is an unincorporated membership association consisting of 32 member clubs. The operation and structure of the NFL, as well as the relationship between the NFL, the member clubs, and the clubs' employees, are governed by the NFL Constitution and Bylaws (the "NFL Constitution"), which broadly empowers the NFL Commissioner to manage the league's affairs.[3] The NFL Commissioner's powers include, but are not limited to, the ability to interpret and establish league policy and procedure, discipline relevant parties (including member clubs and coaches), hire legal counsel to respond to conduct detrimental to "the league, its member clubs or employees, or to professional football," and the "full,

---

[2] *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 (1985) (emphasis added).

[3] *See* Constitution and Bylaws of the National Football League, J.A. 571-1019.

complete, and final jurisdiction and authority to arbitrate" disputes between relevant parties, including between employees and member clubs.[4]

In February 2022, Flores filed a putative class action against the NFL, as well as member clubs the Denver Broncos, New York Giants, and Miami Dolphins, alleging claims of racial discrimination under 42 U.S.C. § 1981, as well as under state and local statutes.[5] In April 2022, Flores filed the now-operative first amended complaint, which included an additional claim by Flores against the Houston Texans as well as claims by two new plaintiffs, current NFL coach Steve Wilks

---

[4] *Id* at art. VIII, J.A. 603-12.

[5] 42 U.S.C. § 1981 provides:

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) Protection against impairment

The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

and former NFL coach Ray Horton, against the Arizona Cardinals and Tennessee Titans, respectively.

In June 2022, the NFL and the relevant member clubs moved to compel arbitration. Defendants argued that the claims brought by Plaintiffs Flores, Wilks, Horton, and putative class members were subject to arbitration as agreed to in Plaintiffs' employment agreements with the various member clubs for which they served as coaches. Each time a Plaintiff had been hired as a coach of a member club, he signed an employment contract that included an express agreement to arbitrate disputes with the relevant member club and also incorporated by reference the NFL Constitution, which includes a broad arbitration provision.[6] Defendants argued that the NFL was entitled to enforce Plaintiffs' arbitration agreements with respect to their claims against the NFL, pursuant to the doctrine of equitable estoppel.[7]

---

[6] *Compare, e.g.*, Flores-Patriots Agreement (Redacted), J.A. 512 (Flores's club-specific arbitration agreement with the Patriots), *with id.* at J.A. 511 (incorporating the NFL Constitution in Flores's contract with the Patriots). *See also* Constitution and Bylaws of the National Football League art. VIII, § 8.3, J.A. 603.

[7] Under the doctrine of equitable estoppel, an arbitration agreement can be enforced against a non-signatory to whom the law will otherwise attribute consent. *Doe v. Trump Corp.*, 6 F.4th 400, 413 (2d Cir. 2021). Accordingly, even though the NFL Constitution's arbitration provision does not explicitly cover disputes between coaches and the NFL, the District Court determined that Plaintiffs were estopped "from avoiding arbitration of their claims against the NFL in light of their allegations that the NFL and the Defendant teams were jointly engaged in the alleged discrimination and retaliation." *Flores v. Nat'l Football League*, 658 F. Supp. 3d 198, 213 (S.D.N.Y. 2023).

In their briefing, Defendants argued that the NFL is the "membership association for the member clubs that hired Plaintiffs, and the NFL itself approved and signed those

### A. The District Court's Order

On March 1, 2023, the District Court granted the motion to compel arbitration with respect to Flores's claims against the Dolphins, Wilk's claims against the Cardinals, and Horton's claims against the Titans—as well as their related claims against the NFL—on the basis of the club-specific arbitration agreements in each of the Plaintiffs' employment agreements.[8] However, the District Court denied the motion as to Flores's claims against the Broncos, Giants, and Texans, and related claims against the NFL.[9] This appeal concerns only Flores's claims against the Broncos, Giants, and Texans, and related claims against the NFL.

### 1. Flores's Claims Against the Denver Broncos and Related Claims Against the NFL[10]

In January 2019, while still under contract as a coach with the Patriots, Flores interviewed for the position of head coach of the Broncos. He alleges that the Broncos discriminated against him

---

agreements." Memorandum of Law in Support of Defendants' Motion to Compel Arbitration and Stay Further Proceedings, J.A. 194. Further, Defendants argued that "Plaintiffs' claims against the NFL are wholly derivative of and factually intertwined with their claims against the member clubs whose employment practices and purported violations of NFL rules and policies are the foundation for such claims." *Id*. at 194-95.

[8] *Flores*, 658 F. Supp. 3d at 220.

[9] *Id*.

[10] Because the details of Defendants' alleged violations of law are ancillary to issues in this appeal, we provide only a general overview.

9

because of his race when they failed to hire him.[11] A month later, in February 2019, Flores was hired as head coach of the Miami Dolphins.

At the time of his interview with the Broncos, Flores's employment contract with the Patriots included two provisions bearing on the arbitrability of his claims. First, Flores agreed to a club-specific arbitration agreement with the New England Patriots.[12] Second, Flores agreed "to comply at all times with, and to be bound by, the NFL Constitution," which was incorporated by reference into his employment agreement "in [its] present form and as amended from time to time hereafter."[13] Section 8.3 of the NFL Constitution grants the NFL Commissioner "full, complete, and final jurisdiction and authority to arbitrate" several types of disputes, including "[a]ny dispute between any . . . coach . . . and any member club or clubs."[14]

Inasmuch as Flores's claims against the Broncos and the NFL plainly fell outside his club-specific arbitration agreement with the

---

[11] More specifically, Flores argues that he was offered an interview with the Broncos as a "sham" to satisfy the Rooney Rule. First Amended Class Action Complaint, J.A. 133-34. The Rooney Rule is a long-standing requirement by the NFL that two opportunities to interview for each open coaching positions be allotted to prospective candidates who are a member of a racial minority group and/or a woman. *See The Rooney Rule*, NFL Football Operations, https://operations.nfl.com/inside-football-ops/inclusion/the-rooney-rule/ [https://perma.cc/JUD3-E5KN].

[12] Flores agreed "that all matters in dispute between Employee and the Club, including without limitation any dispute arising from the terms of this Agreement, shall be referred to the NFL Commissioner for binding arbitration in accordance with the NFL's Dispute Resolution Procedural Guidelines." Flores-Patriots Agreement (Redacted), J.A. 512.

[13] *Id.* at J.A. 511.

[14] Constitution and Bylaws of the National Football League art. VIII, § 8.3, J.A. 603.

Patriots, the District Court considered whether the NFL Constitution's general arbitration provision applied to Flores's claims and was enforceable. It found that the NFL Constitution's arbitration provision applied to Flores's claims but refused to enforce the arbitration provision.[15] The District Court reasoned that the arbitration provision was illusory and unenforceable under Massachusetts state law because "the NFL and its member clubs have the unilateral ability to modify the terms of the NFL Constitution."[16] As a result, the District Court ordered that Flores's claims against the Broncos and related claims against the NFL be litigated in federal court.

## 2. Flores's Claims Against the New York Giants, Houston Texans, and Related Claims Against the NFL

In January 2022, after three seasons as the head coach of the Miami Dolphins, Flores was fired. Afterwards, Flores was interviewed for head coach positions with both the Giants and the Texans. He was not hired for either position, allegedly because of racial discrimination and retaliation. In February 2022, Flores was hired as the senior defensive assistant and linebackers coach of the Pittsburgh Steelers, signing an employment agreement that, like his employment agreement with the Patriots, included both a club-specific arbitration agreement and incorporated by reference the NFL Constitution.[17]

---

[15] *Flores*, 658 F. Supp. 3d at 214-15.

[16] *Id*. at 215.

[17] Flores-Steelers Agreement (Redacted), J.A. 515-522.

Defendants argued that Flores's contract with the Steelers retroactively applied to his claims against the Giants and Texans, compelling arbitration in accordance with the NFL Constitution. Without reaching the question of retroactivity, the District Court concluded, in an Opinion and Order dated March 1, 2023, that "Defendants ha[d] failed to establish that Mr. Flores entered into a valid arbitration agreement" because the version of the Flores-Steelers agreement submitted to the District Court was never signed by the NFL Commissioner.[18] As a result, the District Court ordered that Flores's claims against the Giants, Texans, and related claims against the NFL be litigated in federal court.

## B. Motions for Reconsideration and Appeal

In March 2023, the parties cross-moved for partial reconsideration of the District Court's March 1 order. In their motion, Defendants asserted that they were not given notice that the District Court would rely on the absence of a signed copy of the Flores-Steelers agreement to deny their motion to compel arbitration. They explained that the NFL Commissioner had, in fact, approved the Flores-Steelers agreement on June 17, 2022, and provided the District Court with a new copy bearing his signature. On July 25, 2023, the District Court denied both motions for reconsideration.[19]

---

[18] *Flores*, 658 F. Supp. 3d at 210.

[19] *Flores v. Nat'l Football League*, No. 22-CV-0871, 2023 WL 4744191, at *8 (S.D.N.Y. July 25, 2023).

On August 21, 2023, the NFL, Denver Broncos, New York Giants, and Houston Texans (jointly, "Defendants-Appellants") filed a timely notice of appeal limited to the portion of the District Court's order of March 1, 2023, declining to compel arbitration of Flores's claims against the Broncos, Giants, and Texans, and related claims against the NFL.[20] Defendants-Appellants also appealed the District Court's order of July 25, 2023, denying Defendants' motion for reconsideration.[21] As this Court has already ruled in an unpublished order,  we lack jurisdiction over Plaintiffs' cross-appeal concerning the District Court's decision to compel arbitration of Flores's claims against the Miami Dolphins, Wilks's claims against the Arizona Cardinals, and Horton's claims against the Tennessee Titans.[22] The claims of Wilks and Horton are thus no longer before this Court.

## II. DISCUSSION

We review *de novo* the District Court's denial of a motion to compel arbitration.[23] We review for "abuse of discretion" the District Court's order denying a motion for reconsideration.[24] Importantly, we

---

[20] J.A. 1166.

[21] *Id.*

[22] In an order, this Court granted Defendants-Appellants' motion to dismiss the cross-appeal for lack of appellate jurisdiction.  *See Wilks v. N.Y. Football Giants, Inc.*, No. 23-1185, 2024 WL 4110915, at *1 (2d Cir. Apr. 11, 2024) (declining to exercise pendent appellate jurisdiction).

[23] *Lloyd v. J.P. Morgan Chase & Co.*, 791 F.3d 265, 269 (2d Cir. 2015).

[24] *Contant v. AMA Cap., LLC*, 66 F.4th 59, 65 (2d Cir. 2023).

13

"are free to affirm on any ground that finds support in the record, even if it was not the ground upon which the trial court relied."[25]

First, we consider whether the District Court erred by denying arbitration of Flores's claims against the Denver Broncos and the NFL based on his employment agreement with the New England Patriots, which incorporated by reference the NFL Constitution. Second, we consider whether the District Court correctly denied Defendants' motion to compel Flores to arbitrate his claims against the New York Giants, Houston Texans, and the NFL. In turn, we also consider whether the District Court abused its discretion by denying Defendants' motion for reconsideration.

## A. The District Court Correctly Denied Arbitration of Flores's Claims Against the Denver Broncos and Related Claims Against the NFL

### 1. Legal Framework

The Federal Arbitration Act ("FAA") establishes "both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract."[26] Specifically, Section 2 of the FAA provides that "agreements to arbitrate [are] 'valid, irrevocable, and

---

[25] *Wells Fargo Advisors, LLC v. Sappington*, 884 F.3d 392, 396 n.2 (2d Cir. 2018) (quoting *Headley v. Tilghman*, 53 F.3d 472, 476 (2d Cir. 1995)).

[26] *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotation marks and citations omitted).

enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'"[27]

We have been reminded by the Supreme Court that "[g]iven that arbitration agreements are simply contracts . . . the first question [courts consider] in any arbitration dispute must be: What have these parties agreed to?"[28] To answer this question, courts apply the relevant "ordinary state-law principles that govern the formation of contracts."[29] If the parties have formed a valid contract, courts must generally "rigorously enforce arbitration agreements according to their terms."[30]

Nevertheless, not every self-declared "arbitration agreement" or contractual provision within such an agreement is embraced by the FAA's mandate. The Supreme Court has recently reiterated that the FAA's mandate is limited to the enforcement of actual "arbitration agreements"—meaning "a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute."[31] Indeed, the rigorous enforcement of arbitration agreements under the FAA has long presumed "traditional

---

[27] *Id.* at 336 (quoting 9 U.S.C. § 2).

[28] *Coinbase, Inc. v. Suski*, 602 U.S. 143, 148 (2024) (internal quotation marks and citations omitted).

[29] *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

[30] *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (internal quotation marks and citation omitted).

[31] *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 653 (2022) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974)).

15

arbitral practice" and "the norm of bilateral arbitration as our precedents conceive of it."[32] Fundamentally, "[a]n arbitration agreement . . . does not alter or abridge substantive rights; it merely changes how those rights will be processed."[33] When a party "agree[s] to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum."[34] Accordingly, "the FAA does not require courts to enforce contractual waivers of substantive rights and remedies."[35]

This basic principle—"that the FAA requires only the enforcement of provision[s] to settle a controversy by arbitration"—means that agreements beyond the scope of this tenet are unprotected by the FAA and potentially vulnerable to invalidation.[36] There are a number of alternatives to adjudication for resolving disputes, including not only arbitration but any number of other mechanisms, such as dueling, flipping a coin, or settling controversies with a game of ping pong.[37]

---

[32] *Id.* at 657-58; *see also AT&T Mobility LLC*, 563 U.S. at 348-50 (distinguishing so-called bilateral arbitration from class-wide arbitration and noting that while arbitration works well for bilateral litigation, it is "poorly suited to the higher stakes of class litigation"). *See also post* note 51.

[33] *Viking River*, 596 U.S. at 653.

[34] *Mitsubishi Motors Corp.*, 473 U.S. at 628 (quoted in part in *Viking River*, 596 U.S. at 653).

[35] *Viking River*, 596 U.S. at 653.

[36] *Id.* at 653 n.5 (internal quotation marks and citation omitted).

[37] *Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 689-90 (9th Cir. 2024).

The only form of alternative dispute resolution protected by the FAA, though, is arbitration, and neither a duel nor a coin flip nor a game of ping pong is an arbitration, even if labeled as one.

When statutory rights are at stake, such a vulnerability can turn fatal. The Supreme Court's long-standing "effective vindication" doctrine establishes that even FAA-protected arbitration agreements are subject to invalidation when they "operat[e] . . . as a prospective waiver of a party's *right to pursue* statutory remedies."[38] The Court has explained that only "so long as the prospective litigant effectively may vindicate its statutory cause of action in the *arbitral forum*, [will] the statute . . . continue to serve both its remedial and deterrent function."[39] Put simply, an agreement to submit statutory claims to a non-arbitral process may amount to "contractual waiver[] of substantive rights and remedies" that falls outside FAA protection and is unenforceable under the foundational principles of the effective vindication doctrine.[40]

### 2. Flores Agreed to Arbitrate his Statutory Claims

On appeal, neither party contests the District Court's determination that Flores's claims against the Denver Broncos and the NFL are covered by Flores's contract with the New England Patriots. When Flores interviewed with the Broncos, he was under contract with the

---

[38] *Italian Colors Rest.*, 570 U.S. at 235 (quoting *Mitsubishi Motors*, 473 U.S. at 637 n.19).

[39] *Id.* (quoting *Mitsubishi Motors*, 473 U.S. at 637) (emphasis added).

[40] *Viking River*, 596 U.S. at 653.

Patriots. In his contract, Flores expressly agreed to abide by the NFL Constitution, which was properly incorporated into his agreement under Massachusetts state law.[41]

Section 8.3 of the NFL Constitution grants the NFL Commissioner "full, complete, and final jurisdiction and authority to arbitrate" several types of disputes, including "[a]ny dispute between any . . . coach . . . and any member club or clubs."[42] Even though the NFL arbitration provision does not explicitly cover claims against the NFL itself, the parties do not dispute that the District Court properly held that Flores is estopped from avoiding the arbitration of these claims under applicable state law.[43]

### 3. The NFL's Unilateral "Arbitration" Clause is Unenforceable Against Flores's Statutory Claims

On appeal, Flores argues that even though the NFL Constitution's arbitration provision (as incorporated into his employment contract with the Patriots) covers his claims against the Broncos and the NFL, the arbitration provision is unenforceable against his claims. Notably, while the District Court refused to enforce the arbitration provision as illusory under Massachusetts state law, Flores argues that this Court should affirm the District Court's order on two potential alternative grounds. Flores contends both that the arbitration provision is

---

[41] *See NSTAR Elec. Co. v. Dep't of Pub. Utils.*, 968 N.E.2d 895, 905-06 (Mass. 2012).

[42] Constitution and Bylaws of the National Football League art. VIII, §8.3, J.A. 603.

[43] *Flores*, 658 F. Supp. 3d at 213-14. *See ante* note 7.

unconscionable under Massachusetts state law and that the provision precludes the effective vindication of his statutory rights.

Determining that federal law compels the affirmance of the District Court's order on alternative grounds, we need not reach questions of state law. First, we hold that Flores's agreement under the NFL Constitution to submit his statutory claims against the Broncos and the NFL to the unilateral substantive and procedural discretion of the NFL Commissioner—the principal executive of one of Flores's adverse parties—provides for arbitration in name only and accordingly lacks the protection of the FAA. Second, we hold that Flores's agreement to submit his statutory claims against the Broncos and the NFL to the unilateral discretion of the NFL Commissioner is unenforceable because the agreement fails to guarantee that Flores can "vindicate [his] statutory cause of action in [an] arbitral forum."[44]

### a. Flores's Agreement with Defendants-Appellants is Not Protected by the FAA

While we have long recognized the unique "informalities" of arbitral procedures and the ability of parties to construct arbitration agreements on their own terms,[45] the NFL Constitution's arbitration provision fails to bear even a passing resemblance to "traditional arbitral practice."[46] It contractually provides for no independent

---

[44] *Mitsubishi Motors Corp.*, 473 U.S. at 637.

[45] *Am. Almond Prods. Co. v. Consol. Pecan Sales Co.*, 144 F.2d 448, 451 (2d Cir. 1944).

[46] *Viking River*, 596 U.S. at 658.

arbitral forum, no bilateral dispute resolution, and no procedure.[47] Instead, it offends basic presumptions of our arbitration jurisprudence by submitting Flores's statutory claims to the unilateral substantive and procedural discretion of the "principal executive officer" of one of his adverse parties, the NFL.[48] And "[s]imply labeling something as 'arbitration' does not automatically bring it within the ambit of the FAA's protection."[49] The NFL Constitution's arbitration provision is "unworthy even of the name of arbitration" and thus falls outside of the FAA's protection.[50]

First, the NFL Constitution's arbitration provision fails to provide an independent arbitral forum for bilateral dispute resolution. A basic assumption of "traditional arbitral practice" and "the norm of bilateral arbitration as our precedents conceive of it" is that even while arbitration is a matter of contract, an arbitral forum is an *independent* forum that is separate from the parties to the dispute.[51] Indeed, the

---

[47] *See ante* pg. 7-10 and *post* pg. 20-24 for a discussion of these basic features of arbitration.

[48] Constitution and Bylaws of the National Football League art. VIII, §§ 8.3, 8.4(b), J.A. 603-04. In addition, the NFL Commissioner enjoys authority over and owes responsibilities to member clubs. *Id.* art. VIII.

[49] *Heckman*,120 F.4th at 691 (VanDyke, J., concurring).

[50] *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 940 (4th Cir. 1999) (noting that arbitration is "a system whereby disputes are fairly resolved by an impartial third party" and that a "scheme whereby one party to the proceeding so controls the arbitral panel" is not arbitration, but rather "a sham system").

[51] *Viking River*, 596 U.S. at 657-58. The Supreme Court's arbitration jurisprudence has long presumed that an arbitral forum is independent from the parties to the dispute. *See, e.g., Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 30 (1991) (presuming that an

Supreme Court has explained that "an arbitrator derives his or her powers from the parties' agreement to forgo the legal process and submit their disputes to private dispute resolution."[52] Accordingly, an arbitration agreement that prevents parties from submitting their disputes to an independent arbitral forum, and that instead compels one party to submit its disputes to the substantive and procedural authority of the principal executive officer of one of their adverse parties, is an agreement for arbitration in name only. At a structural level, it lacks the requisite independence between parties and arbitrator that is fundamental to the FAA's conception of arbitration. The FAA authorizes federal courts to *vacate* arbitration awards "where there was evident partiality . . . in the arbitrators."[53] It would make little sense if the same statute nonetheless required the courts to compel parties to arbitrate their claims in a forum that is indisputably partial.[54] Accordingly, the agreement betrays the norm of bilateral

---

"arbitration panel[]" is an entity that is separate from and independent of the parties); *Mitsubishi Motors*, 473 U.S. at 634 (1985) (referring separately to "the parties" and to "the arbitral body with whose assistance [the parties] have agreed to settle their dispute," indicating that the two categories do not overlap).

[52] *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010).

[53] *See* 9 U.S.C. § 10(a)(2).

[54] *United States v. Int'l Bhd. of Teamsters*, 170 F.3d 136, 147 (2d Cir.1999) (explaining that "evident partiality" does not require "actual partiality"); *Pitta v. Hotel Ass'n of New York City, Inc.*, 806 F.2d 419, 423-24 & n.2 (2d Cir. 1986) (explaining that evident partiality may be "infer[red] from objective facts inconsistent with impartiality" and that "[t]he relationship between a party and the arbitrator may, in some circumstances, create a risk of unfairness so inconsistent with basic principles of justice that the arbitration award must be automatically vacated").

dispute resolution and, quite simply, could not be called with a straight face a "forum-selection clause."[55]

Second, the NFL arbitration provision fails to provide "the procedure to be used in resolving the dispute."[56] In fact, in the absence of a procedure provided by contract, Defendants-Appellants argue that an additional clause of the NFL Constitution provides the Commissioner the authority to unilaterally dictate arbitral procedure. Section 8.5 of the NFL Constitution grants the Commissioner the authority to "establish policy and procedure in respect to the provisions of the Constitution and Bylaws."[57] Importantly, the arbitration provision of the NFL Constitution does not reference or incorporate the NFL's Dispute Resolution Procedural Guidelines, which, by contrast, were incorporated into Flores's club-specific arbitration agreements that are not at issue in this appeal.[58] Ultimately,

---

[55] *Viking River*, 596 U.S. at 653 (quoting *Scherk*, 417 U.S. at 519).

[56] *Id.* (quoting *Scherk*, 417 U.S. at 519).

[57] Constitution and Bylaws of the National Football League art. VIII, § 8.5, J.A. 604.

[58] J.A. 512. On appeal, Defendants-Appellants insist that the NFL's Dispute Resolution Procedural Guidelines *do* apply to Flores's claims. However, for support, Defendants-Appellants rely on the NFL Commissioner's general, unilateral procedural power under Section 8.5. Appellants' Reply Br. at 23. The mere reference to the Commissioner's unilateral power is insufficient to establish that Flores agreed to incorporate the NFL's Dispute Resolution Procedural Guidelines into his employment agreement to govern his claims subject to arbitration under the NFL Constitution. *See generally State ex rel. Hewitt v. Kerr*, 461 S.W.3d 798, 811 (Mo. 2015) (applying Missouri law and finding that relator "had no way to know that the NFL intended the guidelines to govern arbitration proceedings"). Further, Defendants-Appellants' letter to the Court does not appear to support their contention that the NFL's Dispute Resolution Procedural

in matters of procedure, as in matters of substance, the NFL Constitution's arbitration provision bears virtually no resemblance to arbitration agreements as envisioned and as protected by the FAA.

Late efforts by the NFL Commissioner to exercise his unilateral discretion to boot-strap a more plausible arbitration process do not alter our analysis. After the submission of briefs on appeal, Defendants-Appellants alerted the Court that the NFL Commissioner had "exercised his discretion" to appoint Peter C. Harvey to arbitrate Flores's claims.[59] Harvey has a professional relationship with Defendants-Appellants on issues at the heart of Flores's claims: he is a member of the NFL's "Diversity Advisory Committee" and has been hired as a diversity consultant by the league.[60] This relationship is perfectly appropriate, it appears, but the late unilateral designation of an adviser to the NFL as arbitrator neither provides for an even facially independent arbitral forum, nor remedies the Commissioner's unilateral contractual authority over both the substance of Flores's statutory claims and the procedures governing their alleged "arbitration."[61] In fact, the Commissioner's unilateral designation of

Guidelines apply. Kannon K. Shanmugam Letter to the Court, No. 23-1185, ECF No. 157 (Sept. 24, 2024). *See post* note 61.

[59] Kannon K. Shanmugam Letter to the Court, No. 23-1185, ECF No. 157 (Sept. 24, 2024).

[60] Douglas H. Wigdor Letter to the Court 2, No. 23-1185, ECF No. 159 (Sept. 24, 2024).

[61] Notably, Defendants-Appellants did not claim in their letter to the Court that Harvey was selected in accordance with the NFL's Dispute Resolution Procedural Guidelines. Indeed, the unilateral designation of Harvey to arbitrate federal statutory

23

an adviser to the NFL represents a further extension of his unilateral power rather than its remedy.[62]

Ultimately, the NFL's arbitration provision is fundamentally unlike any traditional arbitration provision protected by the FAA, in which courts are appropriately cautioned to avoid presuming at an early stage "that the parties and arbitral body conducting a proceeding will be unable or unwilling to retain competent, conscientious, and impartial arbitrators."[63] Because the FAA's mandate is limited to the enforcement of actual "arbitration agreements," the NFL Constitution's arbitration provision enjoys no special deference under the FAA.[64] This holding is an independent reason to affirm the District Court's order denying the motion to compel arbitration of Flores's claims.[65]

---

claims appears to be facially inconsistent with these procedures. *See* National Football League Dispute Resolution Procedural Guidelines, §§ 1.5, 1.7., J.A. 501 (setting forth that when the dispute is "not football-oriented," such as when it "relat[es] to or aris[es] out of discrimination," the Commissioner may either direct the dispute to "the alternative dispute resolution provider *agreed to by the parties*" or to "JAMS, Inc." (emphasis added)).

[62] Accordingly, we additionally find persuasive some of the reasoning of the Fourth and Sixth Circuits, respectively, which refused to enforce arbitration provisions because of the unilateral selection of arbitrators. *See Hooters of Am.*, 173 F.3d at 939; *McMullen v. Meijer, Inc.*, 355 F.3d 485, 493-94 (6th Cir. 2004).

[63] *Mitsubishi Motors Corp.*, 473 U.S. at 634.

[64] *Viking River*, 596 U.S. at 653.

[65] Although the effective vindication doctrine is an independent reason to affirm the District Court's order denying the motion to compel arbitration of Flores's claims, it is closely linked with our conclusion that the FAA does not protect the NFL Constitution's

## b. Flores's Agreement with Defendants-Appellants is Unenforceable

In proceeding to consider the enforceability of Flores's contract to submit his statutory claims to the unilateral substantive and procedural authority of the executive of one of his adverse parties, we hold that the agreement is plainly unenforceable under the most basic principles of the effective vindication doctrine.

Preliminarily, it is important to note that the effective vindication doctrine has traditionally been understood as "a judge-made exception to the FAA" designed to "harmonize competing federal policies" by invalidating offending arbitration agreements.[66] Accordingly, the precise relationship between the "rigorous[]" enforcement of arbitration agreements demanded by the FAA and "a party's *right to pursue* statutory remedies" has been subject to extended judicial debate.[67]

Here, however, we need not reach the outer bounds of potential exceptions to the FAA because the alleged arbitration provision at issue before us plainly fails to provide Flores access to an "arbitral . . . forum."[68] Indeed, for the same reasons that the alleged arbitration

---

arbitration agreement. Both conclusions rely largely on the fact that the arbitral forum guaranteed by the NFL Constitution is inherently biased.

[66] *Italian Colors Rest.*, 570 U.S. at 235.

[67] *Id.* at 233, 235 (internal quotation marks and citations omitted). *See also id.* at 242-43 (Kagan, J., dissenting).

[68] *Viking River*, 596 U.S. at 653 (internal quotation marks and citation omitted).

provision lacks FAA protection, it also functions as a "prospective waiver of a party's *right to pursue* statutory remedies."[69] An arbitration agreement is only enforceable so long as a "litigant effectively may vindicate its statutory cause of action in the *arbitral forum*."[70] Here, enforcing this agreement would require Flores to submit his statutory claims to the unilateral discretion of the executive of one of his adverse parties, without an independent arbitral forum under contract and without a process for bilateral dispute resolution.[71] Because Flores

---

[69] *Italian Colors*, 570 U.S. at 235 (quoting *Mitsubishi Motors*, 473 U.S. at 637 n.19).

[70] *Id.* (quoting *Mitsubishi Motors*, 473 U.S. at 637); *see also State Farm Mutual Auto. Ins. Co. v. Tri-Borough NY Med. Practice P.C.*, 120 F.4th 59, 90–92 (2d Cir. 2024) (noting that this Court has declined to enforce arbitration agreements that "appeared to foreclose" plaintiffs "from vindicating rights granted by federal and state law" and granting plaintiffs' motion for a preliminary injunction to enjoin various separate arbitrations of defendants' other claims against them because plaintiffs' federal RICO claim could not be effectively vindicated in the arbitral forum (internal quotation marks and citation omitted)). An agreement to an alternative dispute resolution scheme like the one here that cannot be readily severed to avoid the effective-vindication doctrine is invalid in its entirety and enforceable neither as to federal nor state law claims. *See, e.g.*, *Gingras v. Think Fin., Inc.*, 922 F.3d 112, 127–28 (2d Cir. 2019); *Cedeno v. Sasson*, 100 F.4th 386, 408 (2d Cir. 2024).

[71] *Compare* Constitution and Bylaws of the National Football League art. VIII, § 8.3, J.A. 603 (the NFL Constitution's general arbitration provision), *with id*. art. III, § 3.8(B), J.A. 583 (a provision of the NFL Constitution, not at issue here, setting forth that when "any stockholder, partner, or holder of any interest in a member club is requested to sell or dispose of his stock or an interest in a membership in the League" and the terms of the sale "cannot be accomplished by mutual agreement," the "price and other terms shall be fixed by arbitration with one arbitrator to be selected by the Commissioner and the other by the affected holder of the stock or interest").

We simply observe that in the circumstances described in § 3.8(B) involving "any stockholder, partner, or holder of any interest in a member club," the arbitrator resolving the dispute appears to be separate from the parties to the dispute. Though in certain eventualities this separateness is less clear (for example, if the two arbitrators cannot agree on the terms nor on the selection of the third arbitrator, "then such arbitrator . . . shall be

26

"has been denied arbitration in any meaningful sense of the word," we conclude that this agreement is unenforceable.[72] We need not resolve the various other state law arguments raised by Defendants to support the enforceability of the Flores-Patriots agreement because Flores cannot be compelled to arbitrate any of the claims against them, given that, as we have explained, the NFL Constitution's arbitration agreement is unenforceable.

## B. The District Court Correctly Denied Arbitration of Flores's Claims Under the Steelers Agreement Against the New York Giants and Houston Texans and Related Claims Against the NFL

Flores also cannot be compelled to arbitrate his claims against the Giants, Texans, or the related claims against the NFL, based on the Flores-Steelers agreement, which incorporates by reference the same

---

named by the Commissioner"), the agreement marks a strong contrast with the agreement before us. *Id.* art. III, § 3.8(B), J.A. 583.

Indeed, the agreement before us vests in the NFL Commissioner—an individual who functions as the head of the NFL and who receives his salary from the owners of the teams that compose the NFL—full and final jurisdiction and authority to arbitrate a federal employment dispute brought against the NFL and some of its member teams.

[72] *Hooters of Am.,* 173 F.3d at 941.

Finally, it is important to note that our opinion does not conflict with our decision in *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527 (2d Cir. 2016). There, we conducted a "very limited" review of an arbitration award under the Labor Management Relations Act, not the FAA. *Id.* at 536, 545 n.13 (quoting *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001)). The rights at issue in *Nat'l Football League Mgmt. Council* were contractual, not federal statutory rights, and they were subject to arbitration according to the terms of a collectively bargained for arbitration agreement. *Id.* at 536.

arbitration agreement in the NFL Constitution.[73] As we explained, the NFL Constitution's arbitration agreement is unenforceable. We therefore also need not decide the various state law issues that the parties raise to support their respective arguments related to the enforceability of the Flores-Steelers agreement. Finally, because we conclude that the arbitration agreement in the NFL Constitution is unenforceable, we further hold that the District Court did not abuse its discretion in denying Defendants' motion for reconsideration.[74]

## III. CONCLUSION

To summarize, we hold as follows:

(1a) Flores's agreement under the NFL Constitution to submit his statutory claims against the Broncos and the NFL to the unilateral substantive and procedural discretion of the NFL Commissioner—the principal executive of one of Flores's adverse parties—provides for arbitration in name only and accordingly lacks the protection of the FAA.

(1b) Flores's agreement to submit his statutory claims against the Broncos and the NFL to the unilateral discretion of the NFL

---

[73] Flores-Steelers Agreement (Redacted), J.A. 515-522.

[74] The District Court denied Defendants' motion for reconsideration on state law grounds. *See Flores*, 2023 WL 4744191, at *2-6. We do not review those bases for the District Court's decision, but because we hold that the District Court did not err when it denied Defendants' motion to compel arbitration, we affirm its denial of Defendants' motion to reconsider that decision.

Commissioner is unenforceable because the agreement fails to guarantee that Flores can "vindicate [his] statutory cause of action in [an] arbitral forum."

(1c) That same unprotected and unenforceable agreement also cannot be used to compel Flores to arbitrate his claims against the Giants and Texans or related claims against the NFL.

(2) The District Court did not abuse its discretion by denying Defendants' motion for reconsideration.

For the foregoing reasons, we **AFFIRM** the District Court's order denying the motion to compel arbitration of Flores's claims against the Denver Broncos, New York Giants, Houston Texans, and NFL. We also **AFFIRM** the District Court's order denying reconsideration.